UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>AMGEN INC. et al.,<br><br>Defendants. | Case No. 2:26-cv-00466-MCS-PVC<br><br>**ORDER RE: MOTION TO REMAND AND MOTION TO DISMISS (ECF NOS. 9, 14)** |

After Plaintiff Sagebrush Health Services initiated this case against Defendant Amgen Inc. in the Ventura County Superior Court, (Compl., ECF No. 1-1), Defendant removed the case to this Court, (Notice of Removal, ECF No. 1). Plaintiff now seeks to remand the case back to the state court. (Mot. to Remand, ECF No. 9.) Separately, Defendant moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss, ECF No. 14.) The motions are fully briefed. (Opp'n to Mot. to Remand, ECF No. 15; Reply Re: Mot. to Remand, ECF No. 17; Opp'n to Mot. to Dismiss, ECF No. 18; Reply Re: Mot. to Dismiss, ECF No. 20.) The Court heard argument on both motions at a hearing on March 16, 2026. (Mins., ECF No. 21.)

## I.    BACKGROUND

According to the complaint, Plaintiff is a covered entity under the 340B Drug Pricing Program, which entitles Plaintiff to purchase certain pharmaceutical drugs at substantially discounted prices from participating drug manufacturers. (Compl. ¶¶ 1, 25, 32–33.) Defendant is one such manufacturer. (*Id.* ¶ 7.) According to Plaintiff, Defendant is a critic of the 340B Program and contests Plaintiff's status as a covered entity. (*Id.* ¶¶ 8–9.) Defendant has launched a series of judicial and extrajudicial challenges to the broader regulatory oversight of the Program and to Plaintiff's covered entity status in particular. (*Id.*) One such extrajudicial effort is the clawing back of over $7 million in savings Plaintiff has realized through its purchase of Defendant's drugs at discounted prices. (*Id.* ¶¶ 9, 42–64.) Plaintiff asserts that it purchased certain drugs at 340B pricing from Defendant and Defendant's later-acquired subsidiary, Horizon Therapeutics plc, through authorized drug wholesalers. (*Id.* ¶¶ 26–30, 34–35.) But Defendant later reversed course and "unilaterally ceased honoring Sagebrush's 340B covered entity status" by "reaching through the Wholesalers to claw back at least $7,000,000 in savings that Sagebrush had properly realized on both Horizon and Amgen 340B drug purchases during 2022–2024." (*Id.* ¶ 52.)

Rather than challenge Defendant's actions through the statutorily mandated

2

Administrative Dispute Resolution process, (*see id.* ¶¶ 6, 43–46), Plaintiff filed suit in Ventura County Superior Court bringing five claims nominally arising under California law: (1) conversion; (2) intentional interference with contract; (3) intentional interference with prospective economic advantage; (4) violation of California Penal Code section 496 for receiving stolen property; and (5) violation of California Business and Professions Code section 17200, (Compl. ¶¶ 73–106).

Plaintiff filed the state court complaint on December 30, 2025. (Notice of Removal ¶ 1.) On January 15, 2026, the state court clerk "officially acknowledged the filing by stamping the complaint as electronically filed." (*Id.* ¶ 23.) Defendant removed the case to federal court the following day. (*See generally* Notice of Removal.) At the time Defendant removed the case on January 16, Defendant had not received service of process of the state court complaint or summons. (*Id.* ¶ 24.)

## II.    MOTION TO REMAND

### A.    Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit must be remanded. *Id.* § 1447(c).

### B.    Discussion

Removal is plainly permitted under 28 U.S.C. § 1441(a) because the Court could exercise original jurisdiction over this action under 28 U.S.C. § 1332(a). According to the complaint, Defendant is incorporated in Delaware and maintains its principal place of business in California. (Compl. ¶ 13.) Plaintiff is organized under Nevada law and maintains its principal place of business in Nevada. (*Id.* ¶ 12.) Because a corporation is

3

a citizen of every state in which it is incorporated and maintains its principal place of business, and Plaintiff is organized as a nonprofit corporation under Nevada law,[1] Plaintiff is a citizen of Nevada[2] and Defendant is a citizen of Delaware and California. *See* 28 U.S.C. § 1332(c)(1); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004) (treating, "for purposes of diversity jurisdiction," an unconventional corporation "as a corporation simply because it has been incorporated under [state] law, regardless of [its] individual structure, purpose, operations, or name"). Plaintiff also seeks $7 million in monetary relief through restitution and compensatory damages. (Compl., Prayer for Relief ¶¶ 1–2.) Since the parties are citizens of different states and the amount in controversy exceeds $75,000, the Court could have exercised original jurisdiction over this action. 28 U.S.C. § 1332(a). Accordingly, removal is permitted under § 1441(a).

The closer issue is whether removal was procedurally defective because Defendant is a citizen of California. "A civil action otherwise removable solely on the basis of the jurisdiction under 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This provision, commonly referred to as the "forum defendant rule," is a procedural, rather than jurisdictional, bar to removal. *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939–40 (9th Cir. 2006). Defendant contends the forum defendant rule is inapplicable because, at the time it removed the case, it had not yet been served with the state court complaint or summons.

---

[1] The Court takes judicial notice of Plaintiff's business entity information on the Nevada Secretary of State's website, which identifies Plaintiff as a domestic nonprofit cooperative corporation without stock. Fed. R. Evid. 201(b); *see, e.g., San Diego Unified Port v. Underwriters at Lloyd's London*, No. 15-cv-00022-WQH-JLB, 2015 U.S. Dist. LEXIS 115693, at *10 (S.D. Cal. Aug. 28, 2015) (taking judicial notice of documents on record with a state secretary of state as "matters of public record" (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001))).

[2] The Court disregards the citizenship of Defendants Does 1–10, whom Plaintiff has sued under fictitious names. 28 U.S.C. § 1441(b)(1).

(Notice of Removal ¶¶ 22–25; Opp'n to Mot. to Remand 16–20.) This practice, where a forum defendant attempts to avoid application of the forum defendant rule by removing the case before it is formally served, is known as "snap removal." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 950 (9th Cir. 2024). This Court has not yet had occasion to determine whether snap removal is permitted under the removal statute, a question the Ninth Circuit has yet to resolve. *See id.* at 964.

The starting point for any question of statutory interpretation is the statutory text and "the presumption that Congress intended that the words used be given their plain and ordinary meaning." *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020). "[W]here the statutory language provides a clear answer, [the analysis] ends there as well." *Hughes Aircraft Co. v. Jacobsen*, 525 U.S. 432, 438 (1999); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (internal quotation marks omitted)).By its plain language, the forum defendant rule only applies to bar removal by a forum defendant who has been "properly joined and served." 28 U.S.C. § 1441(b)(2). The Court agrees with many of its peers that this language is unambiguous. *See, e.g.*, *Dechow v. Gilead Scis., Inc.*, 358 F. Supp. 1051, 1054 (C.D. Cal. 2019). Based on this plain and unambiguous language, removal was not procedurally defective. Defendant removed the case on January 16, 2026. Because it had not been served with process at that time, Defendant was not "properly joined and served," rendering § 1441(b)(2)'s forum defendant rule inapplicable. Ordinarily, the analysis would end here. *See Hughes*, 525 U.S. at 438.

Rather than disputing the conclusion that § 1441(b)(2) is unambiguous, Plaintiff contends that reading the statute to permit removal by a forum defendant who has not yet been served would be an absurd result that runs contrary to the statute's purpose. (Mot. to Remand 15–17; Reply Re: Mot. to Remand 8–9.) While the Supreme Court has cautioned "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what is says there," *Barnhart*, 534 U.S. at

461–62 (internal quotation marks omitted), unambiguous statutory text generally should not be interpreted to lead to an "absurd result," *Pacheco*, 977 F.3d at 767. The Ninth Circuit and Supreme Court have repeatedly warned that this absurdity doctrine can "override the literal terms of a statute only under rare and exceptional circumstances." *United States v. Lucero*, 989 F.3d 1088, 1098 (9th Cir. 2021) (internal quotation marks omitted). "[T]o justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense." *Id.* (alteration in original) (internal quotation marks omitted).

The Court is not persuaded this is such a rare and exceptional circumstance. The reasoning behind allowing federal courts to exercise diversity jurisdiction in the first place is a fear that state courts cannot be trusted to fairly treat out-of-state defendants in suits filed by in-state residents. *Lively*, 456 F.3d at 940. The same fairness concern is not present when the defendant is the in-state party. *Id.* Section 1441(b)(2)'s forum-defendant rule was thus promulgated to prevent cases from coming into federal court on the basis of diversity of citizenship when the primary justification for allowing diversity cases is lacking. Several courts have observed that Congress likely included the "properly joined and served" requirement "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom [the plaintiff] does not intend to proceed, and whom [the plaintiff] does not even serve." *Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (alterations in original) (internal quotation marks omitted). Allowing an in-state defendant to avoid application of the forum defendant rule by utilizing language that was meant to curtail fraudulent joinder by a plaintiff arguably contradicts § 1441(b)(2)'s purpose. But it is not the judiciary's function "to identify and close potential statutory loopholes." *Harrison v. Sonesta Int'l Hotels Corp.*, No. 2:23-cv-04867-SB-RAO, 2023 WL 5351873, at *3 (C.D. Cal. Aug. 18, 2023). That is a job for Congress. *See* U.S. Const. art. I, § 1. And it is far from clear that a reasonable legislator would never intend the results of § 1441(b)(2)'s plain language. *See Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) ("In

6

statutory interpretation, an absurdity is not mere oddity."). As the Second Circuit has recognized, Congress could have adopted the "properly joined and served" language "to both limit gamesmanship and provide a bright-line rule keyed on service, which is more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 706 (2d Cir. 2019). Because it is not the Court's role to close statutory loopholes and because an interpretation allowing for snap removal is not wholly irrational, this Court declines to apply the absurdity doctrine to override § 1441(b)(2)'s unambiguous language.

Plaintiff resists this conclusion and points to other cases from the Central District declining to allow snap removal by a forum defendant. (Mot. to Remand 15–16 (collecting cases).) Plaintiff contends there is a "strong consensus in the Central District" that snap removal is impermissible because it promotes gamesmanship by in-state defendants. (*Id.* at 17 (internal quotation marks omitted); *see also* Reply Re: Mot. to Remand 9.) The primary case Plaintiff invokes to support this argument reasoned it was important to follow the "strong consensus" against snap removal in part because "in most matters it is more important that the applicable rule of law be settled than it be settled right." *Black v. Monster Beverage Corp.*, No. EDCV-15-02203-MWF-DTB, 2016 WL 81474, at *4 (C.D. Cal. Jan. 7, 2016) (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting)). Even if there was a strong consensus in the Central District against snap removal in 2016 when *Black* was decided, a decade later the state of the law is far murkier. *See Adirondack Ins. Exch. v. Kia Corp.*, Nos. 8:24-cv-01134-JWH-MRW, 8:24-cv-01139-JWH-AGR, 2024 WL 4213586, at *2 n.5 (C.D. Cal. Sept. 16, 2024) (collecting Central District cases on either side of the snap removal split). Indeed, several circuit courts have since expressly endorsed snap removal by a forum defendant based on § 1441(b)(2)'s unambiguous language. *See Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 154 (3d Cir. 2018); *Gibbons*, 919 F.3d at 707; *Anaya v. Schlumberger Tech. Corp.*, No. 24-20170, 2024

7

WL 5003579, at *3 (5th Cir. Dec. 6, 2024). Given the divide within the Central District on the question of snap removal and the evolution of the law in favor of the practice in other Circuits, the Court is not persuaded that there is an appreciable benefit to disallowing snap removal simply because many of its peers have done so.

While the Ninth Circuit has expressly declined to wade into the debate on the propriety of snap removal, *Casola*, 98 F.4th at 964–65, interpreting § 1441(b)(2) to allow for pre-service removal by an in-state defendant is consistent with existing circuit precedent. The Ninth Circuit has held that "formal service is not a prerequisite to removal." *Mayes v. Am. Hallmark Ins. Co. of Tex.*, 114 F.4th 1077, 1079 (9th Cir. 2024). However, "[t]hose being sued in state court must wait at least until the case against them becomes a 'pending' 'civil action,' 28 U.S.C. § 1441(a), before removing the matter to federal court." *Casola*, 98 F.4th at 965. "In California, this means waiting until the complaint has been officially filed in the superior court." *Id.* Putting these two rules together, a defendant can remove a case before receiving formal service of process so long as the complaint has been officially filed with the state court. If the statute permits removal by defendants who fall into this category, then it would be illogical to disregard § 1441(b)(2)'s plain language limiting application of the forum defendant rule to defendants "properly joined and served." The statute allows for removal both before and after formal service, but the forum defendant rule is narrower: it only applies to post-service removals.

Removal here was consistent with these precedents. Plaintiff filed the complaint in state court on December 30, 2025. (Notice of Removal ¶ 1.) The case was removable under *Casola* and *Mayes* when the state court officially recognized the complaint as filed on January 15, 2026. Because Defendant removed the case the following day, before it was formally served, (*id.* ¶¶ 23–24), the forum defendant rule does not apply. The motion to remand is denied.[3]

---

[3] Because the Court has jurisdiction based on diversity of citizenship and the forum

## III.   MOTION TO DISMISS

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B.   Discussion

Defendant's primary argument for dismissing the complaint is that Plaintiff's claims are all barred under *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011).

---

defendant rule does not apply, the Court does not reach the parties' additional arguments about whether Plaintiff's nominal state law claims present a substantial question of federal law sufficient to invoke this Court's federal question jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Because the Court does not need to reach this argument to adjudicate the motion, the Court also denies Plaintiff's request for judicial notice, (RJN, ECF No. 9-2), as unnecessary, *see Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016).

9

(Mot. to Dismiss 6–14.) For the following reasons, the Court agrees.

Congress created the 340B Drug Pricing Program to improve healthcare access for low-income and uninsured patients. *United States ex rel. Adventist Health Sys. of W., v. AbbVie Inc.*, 169 F.4th 1137, 1140 (9th Cir. 2026) (citing Veterans Health Care Act of 1992, Pub. L. No. 102-585, 106 Stat. 4943). Under the 340B Program, certain healthcare providers, known as "covered entities," can purchase drugs at substantially discounted prices from drug manufacturers. *See* 42 U.S.C. § 256b(a)(1). If a drug manufacturer wants its drugs to be covered by federal insurance programs like Medicare and Medicaid, it is required to participate in the 340B Program. 42 U.S.C. §§ 1396r-8(a)(1), (5)(A). To opt into the program, a drug manufacturer must sign an pharmaceutical pricing agreement ("PPA") with the Department of Health and Human Services ("HHS"). *AbbVie*, 169 F.4th at 1140 (citing 42 U.S.C. § 256b(a)(1)). The Health Resources and Services Administration ("HRSA"), a part of HHS, oversees and manages the 340B Program. 340B Drug Pricing Program Ceiling Price and Manufacturer Civil Monetary Penalties Regulation, 83 Fed. Reg. 61563, 61563 (Nov. 30, 2018). Of particular relevance to this case, covered entities have no private right of action under 340B to resolve pricing disputes with drug manufacturers. *Astra*, 563 U.S. at 117. Instead, Congress created an Administrative Dispute Resolution ("ADR") process overseen by HRSA. *See* 42 U.S.C. § 256b(d)(3). The ADR process is meant to deal with a covered entity's claims "that it has been overcharged by a manufacturer" for drugs and claims "that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price." 42 C.F.R. § 10.21(a)(1). By creating this ADR mechanism to resolve pricing disputes between covered entities and manufacturers, "Congress vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role to covered entities." *Astra*, 563 U.S. at 117.

In *Astra*, the operator of several covered entities sued a group of drug manufacturers in federal court for charging the covered entities drug prices in excess of

the 340B discounted prices. *Id.* at 116. In order to bypass the statutorily mandated ADR process, the operator styled its lawsuit as a breach of contract action brought by a third-party beneficiary of the PPAs between the manufacturers and HHS, rather than as an effort to enforce the 340B Program directly. *Id.* The Supreme Court unanimously rejected the gambit, holding that a third-party suit to enforce a PPA between a drug manufacturer and HHS is "in essence a suit to enforce the statute itself." *Id.* at 118. The Court reasoned that the operator's suit was premised entirely on allegations that the manufacturers had charged the entities the operator oversaw amounts more than the 340B discounted prices. *Id.* at 118–19. Importantly, the covered entities' right to purchase drugs at discounted prices wholly derived from the 340B Program statute itself rather than from some "independent substantive obligation arising only from the PPAs." *Id.* Because the statutory obligations arising under 340B and contractual obligations arising under the PPA "are in substance one and the same," the treatment of the two claims must also be the same, "no matter the clothing in which 340B entities dress their claims." *Id.* at 114 (cleaned up). Since there is no private right of action for covered entities to enforce 340B's pricing obligations directly, there also could be no right of action to sue as a third-party beneficiary to enforce the PPA. *Id.* at 118–19.

Under *Astra*'s reasoning, Plaintiff's claims are barred. While Plaintiff has dressed its claims in the clothing of California law, the claims are all rooted in Plaintiff's assertion that it is entitled to purchase drugs at 340B discounted prices and that Defendant therefore had no right to claw back $7 million in realized savings through wholesalers or to unilaterally terminate Plaintiff's ability to purchase Defendant's drugs at discounted prices. (*See, e.g.*, Compl. ¶¶ 74, 83, 90, 94, 100, 104–05.) Plaintiff's suit is nothing more than an attempt to enforce its right to purchase Defendant's drugs at 340B prices, a right that is wholly based in the 340B Program rather than some independent source. The Court is not persuaded by Plaintiff's assertion that it is not seeking to enforce its right to purchase drugs at 340B discounted prices here because it bases its claims on the fact that Defendant sold its drugs to Plaintiff at the discounted

11

prices, but then reversed course and clawed back the savings Plaintiff had realized. (*See* Opp'n to Mot. to Dismiss 8–9.) Plaintiff has pointed the Court to no authority holding that a manufacturer who refuses to sell drugs at a discounted price is analytically distinct from a manufacturer who initially sells drugs at a discounted price but then later decides to claw back the purchaser's realized savings. In both scenarios, the practical effect of the manufacturer's conduct is that the covered entity has to pay the non-discounted price to receive the manufacturer's drugs. Whether the covered entity has to pay the higher price before or after it receives the drugs does not impact the entity's underlying claim that it was entitled to pay the 340B discounted price and no more. Because the 340B Program is the sole basis for Defendant's obligation to sell and Plaintiff's right to purchase drugs at discounted prices, Plaintiff's suit is "in essence" an attempt to enforce the 340B program itself. *See Astra*, 563 U.S. at 118.

Of particular importance to *Astra*'s reasoning was the fact that allowing covered entities to avoid the ADR process by stating a third-party beneficiary contract claim would "spawn a multitude of dispersed and uncoordinated lawsuits by 340B entities." *Id.* at 120. Such a result would run directly against Congress's goal of creating a unitary enforcement mechanism overseen by HRSA. *Id.* at 120. Indeed, the need for a uniform enforcement mechanism is especially important here given the 340B Program's interactions with other complex federal drug pricing programs, particularly the Medicaid Drug Rebate Program. *Id.* at 119–20, 120 n.6. This concern about spawning a tsunami of uncoordinated lawsuits by individual covered entities applies in full force here. If a covered entity could avoid HRSA's ADR process by suing to recover discounts to which it claims entitlement under a tort theory like conversion or bring claims for intentional interference with contract or prospective economic advantage, every covered entity would file separate lawsuits in order to avoid the inefficiencies and delays that purportedly plague HRSA's ADR process. *See Astra*, 563 U.S. at 121; (*see also* Compl. Ex. A, at 32, ECF No. 1-1 (asserting the ADR process "is expensive, time-

consuming, and often ineffective").)[4] Such a result would work directly against the unitary enforcement mechanism Congress designed.

The Court rejects Plaintiff's contention that *Astra*'s holding is somehow "limited" to barring third-party beneficiary contract claims brought by covered entities to enforce PPAs. (*See* Opp'n 9–10.) True, *Astra* was focused on covered entities attempting to enforce PPAs as third-party beneficiaries, but the Court is also bound by the reasoning employed to reach that holding. *Thompson v. Hebdon*, 7 F.4th 811, 827 (9th Cir. 2021) ("Our decisions must comport with the reasoning or theory, not just the holding, of Supreme Court decisions . . . ." (internal quotation marks omitted)). And indeed, multiple courts in this circuit have applied *Astra*'s reasoning to bar claims beyond just third-party beneficiary contract claims based on PPAs. *See AIDS Healthcare Found. v. Apexus, LLC*, No. 23-55425, 2024 WL 3886974, at *2 (9th Cir. Aug. 21, 2024) (applying *Astra* to bar a third-party beneficiary's attempt to enforce a non-PPA contract); *Am. Hosp. Ass'n v. Dept. of Health & Hum Servs.*, No. 4:20-cv-08806-YGR, 2021 WL 616323, at *5 (N.D. Cal. Feb. 17, 2021) (applying *Astra* to bar covered entities' Administrative Procedure Act claims against HHS).

The Ninth Circuit's recent decision in *United States ex rel. Adventist Health Sys. of West v. AbbVie Inc.*, 169 F.4th 1137 (9th Cir. 2026), does not compel a different conclusion.[5] In *AbbVie*, the Ninth Circuit held that *Astra* did not bar a covered entity's

---

[4] Pinpoint citations of this document refer to the CM/ECF pagination.

[5] The Ninth Circuit decided *AbbVie* the day after the March 16 hearing, so the parties did not have an opportunity to discuss the case in their initial briefs. Plaintiff filed a notice of supplemental authority in which it both notified the Court about the recent decision and provided substantive arguments about how, in its view, the decision applies to this case. (*See* Notice of Suppl. Authority, ECF No. 24.) Defendant then filed a response in which it provided substantive arguments about how *AbbVie* actually supports its arguments. (Resp., ECF No. 25.) Plaintiff filed an objection to Defendant's response, contending it was an impermissible supplemental legal brief. (Obj., ECF No. 25.) While Plaintiff is correct that the Court generally does not permit any party to file a supplemental brief without prior leave of the Court, (Initial Standing Order § 9(d),

13

ability to sue a drug manufacturer as a qui tam relator for violations of the False Claims Act ("FCA"). *Id.* at 1144. Unlike in *Astra*, the *AbbVie* relator did "not seek to recover losses that it suffered, such as overcharges for 340B drugs defendants sold to [the relator]." *Id.* at 1141. The relator sought relief "on behalf of the government and not itself" "to remedy allegedly false or fraudulent claims resulting in financial loss to the government." *Id.* at 1144. In particular, the relator alleged that "defendants [were] liable for submitting false claims, causing the government to overpay millions of dollars through Medicaid, Medicare, and government-funded clinics." *Id.* at 1145. Thus, the relator premised the suit on false claims the defendants had submitted to the government rather than the defendant's failure to sell drugs to a covered entity at 340B discounted prices. *Id.* at 1144–45. That the relator was not "in essence" attempting to enforce the 340B Program through a private right of action was further supported by the fact that the relator did not seek compensatory damages equaling the amounts the defendant had overcharged it. *Id.* at 1145. Instead, the relator "pled FCA damages for the government and FCA relator damages for itself." *Id.*

*AbbVie*'s reasoning is inextricably tied to the nature of the claim at issue in that case, namely, an FCA claim brought by a qui tam relator. Since Plaintiff has not brought an FCA claim in this case, *AbbVie* has little impact on the Court's analysis. However, examining the remedies Plaintiff seeks here, as *AbbVie* instructs the Court to do, confirms that Plaintiff is in essence seeking to enforce the 340B Program directly. First,

ECF No. 7), Plaintiff's position is puzzling given that it too provided supplemental legal argument in its notice of supplemental authority, (*see* Notice of Suppl. Authority 2–3). Given that *AbbVie* is germane to the legal issues presented in this case and because both parties provided additional legal arguments in their filings, the Court exercises its discretion to consider both Plaintiff's notice of supplemental authority and Defendant's response thereto in their entirety. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."). Plaintiff's objection to Defendant's response is overruled.

14

Plaintiff seeks at least $7 million in restitution and compensatory damages, which is the amount Plaintiff contends Defendant wrongfully clawed back from Plaintiff through the wholesalers, plus interest. (Compl., Prayer for Relief ¶¶ 1–2.) As discussed above, $7 million dollars in clawed-back savings is not analytically distinct from $7 million in overcharges. Because of that, Plaintiff is effectively seeking restitution and damages equal to the amount it contends it was forced to pay in excess of the amount it was entitled to pay under 340B. (*See* Compl. ¶¶ 42, 57.) Second, Plaintiff seeks a declaratory judgment that Defendant is obligated to sell drugs to Plaintiff "at or below the 340B discount price," and an injunction compelling Defendant "to honor 340B pricing and chargeback processing consistent with" federal law. (*Id.*, Prayer for Relief ¶¶ 5–6.) That Plaintiff is pursuing monetary, declaratory, and injunctive relief all tied to its right to purchase drugs at 340B discounted prices distinguishes this case from *AbbVie*, in which the relator pleaded no analogous remedies. That Plaintiff expressly pleads these remedies also confirms that its claims are actually a covert attempt to manufacture a private right of action to enforce the 340B Program.

In sum, Plaintiff is seeking to enforce its right to purchase drugs at 340B prices. Because there is no private right of action for a covered entity to enforce the 340B Program directly, Plaintiff's claims are barred. The motion to dismiss is granted.

### C.   Leave to Amend

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Because Plaintiff's claims are all barred by *Astra*, the Court finds it would be futile to allow leave to amend. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) Weighing the *Foman* factors, the Court declines to exercise its discretion to grant Plaintiff leave to amend.

## IV.    CONCLUSION

The Court denies the motion to remand and grants the motion to dismiss without leave to amend. The Court directs the Clerk to enter judgment consistent with this Order and close the case.

**IT IS SO ORDERED.**

Dated: April 15, 2026

_Mark C. Scarsi_

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

16